(No. 6784.  May 20, 1940.)

STATE, Respondent, v. JACK W. MEAD, Appellant.

[102 Pac. (2d) 915.]

450

W. A. Ricks, for Appellant.

J. W. Taylor, Attorney General, and R. W. Beckwith, E. G. Elliott, D. W. Thomas and Lawrence B. Quinn, Assistant Attorneys General, for Respondent.

HOLDEN, J.—Appellant was prosecuted and convicted under subdivision (b) of section 48-528, I. C. A. (the facts being stipulated), in the probate court of Madison county of failing to stop after an automobile collision on what is known as the "Yellowstone Highway." From that conviction he appealed to the District Court of the Ninth Judicial District in and for Madison county, where he was again convicted. The appeal to this court is from the last-mentioned conviction.

He contends the court erred in adjudging him guilty "for the reason that said statute is unconstitutional and void because the meaning of it cannot be judicially ascertained, and it omits certain necessary and essential provisions which go to impress the acts committed as being wrongful and criminal, and the court is required to supply said statute with deficiencies and undertake to make it definite and certain," and for the further reason "it is so indefinite and uncertain that no person can determine in advance what he may or what he may not do under it."

In support of his attack upon the statute, appellant vigorously argues the language of the statute is "so general and indefinite as to embrace not only acts properly and legally punishable, but others not punishable—acts harmless and innocent in their nature," and therefore it is insisted the statute is "manifestly void for uncertainty"; that "accidents may occur anywhere, on private property, or they may occur on the highway with no other person around. A blow-out on the highway or on private property where the operator of the motor vehicle fails to stop is a criminal offense under this statute if there is damage to property."

Subdivision (b) of section 48-528, *supra* (Uniform Motor Vehicle Act), provides:

"The driver of any vehicle involved in any collision or in an accident resulting in damage to property shall immediately stop such vehicle at the scene of such accident and

any person violating this provision shall upon conviction be punished as provided in section 48–557.''

■ For the purpose of ascertaining the general scope of the legislation intended, we turn, as we may, to the title[1] (*Turner v. Coffin*, 9 Ida. 338, 358, 74 Pac. 962; *State ex rel. Canyon County v. Forch*, 26 Ida. 755, 761, 146 Pac. 110), where we find the purpose of the act is stated to be to *regulate* the *operation* of *vehicles* on the *highways* of the state; to fix and define ''rules of the road for motor and other vehicles and the drivers thereof while traveling on any highway''; to provide certain acts shall be unlawful and to prescribe penalties for the commission of such acts. From which it is obvious the general purpose of the legislature was to regulate the operation of motor vehicles on the highways of the state.

■■ That brings us to the question: Is the statute, as contended by appellant, ''so indefinite and uncertain that no person can determine in advance what he may or what he may not do under it?''

In the determination of this question no single provision of the act should be separated and construed alone (*Boise-Payette Lumber Co. v. Challis Independent School Dist. No. 1*, 46 Ida. 403, 268 Pac. 26). Furthermore, other portions of the act may be resorted to as an aid in determining the question (*Sprouse v. Magee*, 46 Ida. 622, 631, 269 Pac. 993). In fact, all parts of an act may be considered and construed

---

[1] ''An act styled the uniform act, regulating the operation of vehicles on highways; defining certain terms used in this act; defining the rules of the road for motor and other vehicles and the drivers thereof while traveling on any highway; providing for the size, construction and equipment of vehicles which may travel upon the highways; defining and regulating the lighting equipment, brakes and other vehicle devices on motor vehicles and other vehicles while traveling on the public highways; providing that certain acts defined herein shall be unlawful, and prescribing penalties for such violations; making uniform the laws relating to the operation of vehicles on highways; repealing Chapter 177 of the 1925 Session Laws, chapter 249 of the 1921 Session Laws, and sections 1615, 1616, and 1618 of the compiled statutes; and otherwise regulating the operation of vehicles on highways and the use of such highways, and prescribing the time when this act shall take effect.'' (Sess. Laws 1927, chap. 260, p. 482.)

together (*Idaho Gold Dredging Co. v. Balderston,* 58 Ida. 692, 701, 78 Pac. (2d) 105, and cases there cited).

The first section (48–501, I. C. A.) is devoted to definitions. Among other words defined is "highway." It is defined as being:

"Every way or place of whatever nature open to the use of the public, as a matter of right, for purposes of vehicular travel. The term 'highway' shall not be deemed to include a roadway or driveway upon grounds owned by private persons, colleges, universities or other institutions."

The next section (48–502) provides:

"It shall be unlawful and punishable as provided in section 48–558 for any person whether licensed or not who is an habitual user of narcotic drugs or any person who is under the influence of intoxicating liquor or narcotic drugs to drive any vehicle upon any highway within this state."

Section 48–503 is headed "Reckless Driving." It provides:

"Any person who drives any vehicle upon a highway carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving and upon conviction shall be punished as provided in section 48–559."

Section 48–504, among other things, provides:

"Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at such a speed as to endanger the life, limb or property of any person."

Section 48–505 requires: "Railroad warning signals must be obeyed," and provides it shall be unlawful for the driver of a vehicle on a highway to fail to bring his "vehicle to a complete stop before traversing" a grade crossing. Further regulations (headings of which are emphasized in black type) cover: "Special speed limitation on bridges" (sec. 48–507); driving "on right side of highway" (sec. 48–509);

"Meeting of vehicles" (sec. 48–511); "Overtaking a vehicle" (sec. 48–512); "Limitations on privilege of overtaking and passing" vehicle on highways (sec. 48–513); "Driver to give way to overtaking vehicle" on highway (sec. 48–514); "Turning at intersections" on highways (sec. 48–516); "Signals on starting, stopping or turning" on highways (sec. 48–517); "Right of way" entering intersections (sec. 48–518); "Through highways—vehicles on intersecting highways to stop—signs" (sec. 48–521); "Stopping on highway" (sec. 48–524); "Driving on mountain highways" (sec. 48–527).

Keeping in mind the statute was enacted for the sole purpose of regulating vehicular travel on the highways of the state and that these rules were prescribed in order that that purpose might be accomplished, can it be seriously insisted the legislature was not still legislating about vehicular travel on highways when it included subdivision "b," *supra*? That subdivision, even when separated and construed alone, strongly indicates it was. But when considered and construed in connection with all these rules of the road, is not the citizen informed with reasonable certainty if he is involved in a collision or an accident while driving a motor vehicle on a highway, resulting in damage to property, he must "immediately stop such vehicle at the scene of the accident," and if he fails to do so that he subjects himself to punishment?

In *People v. Thompson*, 259 Mich. 109, 242 N. W. 857, the Supreme Court of Michigan (1932) passed upon the constitutionality of Michigan's Uniform Motor Vehicle Act. The provisions of subdivisions (a) and (b) of section 30 of that act are almost identical with subdivisions (a) and (b) of section 48–528, *supra*. The attack upon the constitutionality of our statute is substantially the same as that made upon the constitutionality of the Michigan statute. In the very able and convincing opinion of the Michigan court upholding the constitutionality of the Michigan Uniform Motor Vehicle Act, it recognized, as we do, the rule that criminal statutes must be expressed in clear and definite terms; in other words, that the accused has a right to be informed in all criminal prosecutions of the acts and conduct prohibited and made punishable (*State v. Burns*, 53 Ida. 418, 426, 23 Pac. (2d)

731). To the same effect, *United States v. Capital Traction Co.*, 34 App. (D. C.) 592, 598, 19 Ann. Cas. 68, cited and approved in *State v. Burns, supra.*

We conclude our statute fully measures up to that requirement. Judgment affirmed.

Ailshie, C. J., and Budge, Givens and Morgan, JJ., concur.