922 P.2d 1059

**The STATE of Idaho, Plaintiff–Appellant,**

v.

**Brian Kenneth JULIAN, Defendant–Respondent.**

No. 21703.

Supreme Court of Idaho,
Boise, January 1996 Term.

July 31, 1996.

Rehearing Denied Sept. 18, 1996.

134

Alan G. Lance, Attorney General; Gerald L. Wolff, Special Deputy Attorney General (argued), Caldwell, for appellant.

Manweiler, Bevis and Cameron, Boise, for respondent. Mark H. Manweiler argued.

SILAK, Justice.

The state of Idaho (the State) appeals from the district court's order suppressing items seized during an inventory search of Brian Julian (Julian). The district court invalidated the underlying arrest because it concluded that Julian was arrested for misdemeanor domestic battery at a scene other than that of the alleged domestic disturbance. We reverse and remand.

## I.

### FACTS AND PROCEDURAL BACKGROUND

Prior to May 20, 1994, Julian and his wife had been separated for approximately six weeks. While visiting her at their residence, Julian discovered a flower arrangement sent to Mrs. Julian by a high school friend of the Julians. Julian called the friend and the two got into a heated argument over the phone. What occurred next is disputed by the parties, but the district court found that there was some type of struggle between the Julians and, during the course of the struggle, Mrs. Julian's arm was broken.

Afterwards, Mrs. Julian attempted to use the pre-programmed 911 number on her phone. Instead, she mistakenly hit the redial button and rang the acquaintance's resi-

dence in the state of Washington. When the friend answered the phone, Mrs. Julian asked if she had reached 911, realized her mistake and hung up. The Julians then left for St. Luke's Regional Medical Center. In the meantime, the friend realized that it was Mrs. Julian who had just called him. He called the Ada County Sheriff's dispatch and reported that he believed Mrs. Julian was being battered by Julian. Ada County dispatched two deputies to the Julian residence.

Deputies Wright and Monson arrived at the Julian residence at approximately 1:30 a.m. The deputies' repeated knocks on the front door went unanswered as did a telephone call placed by the Ada County dispatcher. Receiving no response from inside, the deputies entered the Julian home through the unlocked front door. Once inside, the deputies allegedly discovered a blood stained rag sitting on the kitchen counter and items lying on the floor which evidenced a struggle. None of these items were seized or photographed. While the deputies were searching the home, Ada County dispatch informed the deputies that the Julians were at St. Luke's Regional Medical Center. The deputies exited the home and proceeded to the hospital.

The sequence of events at the hospital are also disputed, but it appears that a third deputy, Deputy Buzzini, arrived at the hospital prior to Deputies Monson and Wright's arrival at 2:15 a.m. A hospital security guard alerted the three deputies that Julian was sitting in his car in the emergency room parking lot. Deputy Monson asked Julian to step out of the car and conducted a pat search. Deputy Buzzini then went inside to talk to Julian's wife while the other deputies continued to speak with Julian. Following his interview with Mrs. Julian, Deputy Buzzini signaled the other deputies to arrest Julian. The deputies cited Julian for misdemeanor domestic battery, Section 18–918 of the Idaho Code. He was transported to the Ada County jail, where, during a standard inventory search, a small glass vial of cocaine fell out of his shoe.

Although the arrest citation was issued for misdemeanor domestic battery, the State

charged Julian with aggravated battery, Sections 18–903 and 18–907(a) of the Idaho Code, and possession of a controlled substance under Section 37–2732(c) of the Idaho Code. The State subsequently dismissed the aggravated battery charge. Following the preliminary hearing, Julian moved the district court for an order suppressing the items seized during the inventory search. In ruling on the motion, the district court noted that Section 19–603(6) of the Idaho Code only allows an arrest for domestic battery to be made "at the scene of a domestic disturbance." Since no acts of domestic battery had occurred at St. Luke's Regional Medical Center, the court concluded that the deputies had no authority to arrest Julian and suppressed the items subsequently seized from him. Alternatively, the court held that if it were to find that Julian was arrested for an offense other than that of domestic battery, Julian was not properly informed of the "cause of arrest" as required by Section 19–608 of the Idaho Code.

The State appealed.

## II.

### ISSUES ON APPEAL

1. Did the district court err in ruling that Julian was not lawfully arrested and placed into police custody?

   A. Did probable cause exist for Julian's arrest?

   B. Is the fact that Julian was issued a citation for domestic battery relevant to the validity of his arrest?

2. Did the district court err in ruling that the cocaine was not lawfully seized from Julian's person?

   A. Was there a valid seizure incident to Julian's arrest?

   B. Was there a valid seizure pursuant to an inventory of Julian's possessions at the time of his being booked into the Ada County Jail?

## III.

### STANDARD OF REVIEW

■ When reviewing a trial court's treatment of a motion to suppress, this Court will overturn factual findings made by the trial court only if they are clearly erroneous. *State v. Weber,* 116 Idaho 449, 452, 776 P.2d 458, 461 (1989). However, the Court "may undertake a free review of the trial court's determination as to whether constitutional requirements have been satisfied in light of facts found." *Id. quoting State v. Heinen,* 114 Idaho 656, 658, 759 P.2d 947, 949 (Ct. App.1988). The measuring of the facts as found by the district court against the constitutional standard of reasonableness is the ultimate responsibility of the appellate court. *Heinen,* 114 Idaho at 658, 759 P.2d at 949.

## IV.

### ANALYSIS

**A. The Fact That The Officers Cited Julian For Misdemeanor Domestic Battery Does Not Preclude An Inquiry Into Whether An Objective Assessment Of The Facts Supports A Finding of Probable Cause To Arrest For A Related Felony.**

■ A vial of cocaine was discovered in Julian's shoe during a custodial inventory search of Julian's person and property. Custodial inventory searches, so long as performed according to standardized police procedures, have been held to be permissible under the Fourth Amendment to the United States Constitution. *State v. Smith,* 120 Idaho 77, 80, 813 P.2d 888, 891 (1991). However, a valid arrest of the person searched is a condition precedent to a valid inventory search. *Id.* Whether or not an arrest was legal is governed by state law. *United States v. Watson,* 423 U.S. 411, 420–21 n. 8, 96 S.Ct. 820, 826–27 n. 8, 46 L.Ed.2d 598 (1976); *State v. Pontier,* 95 Idaho 707, 712, 518 P.2d 969, 974 (1974).

The Idaho Legislature prescribed the circumstances under which a peace officer may arrest. I.C. § 19–603. Idaho's arrest statute provides:

> **When peace officer may arrest.**—A peace officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person:

1. For a public offense committed or attempted in his presence.

2. When a person arrested has committed a felony, although not in his presence.

3. When a felony has in fact been committed and he has reasonable cause for believing the person arrested to have committed it.

4. On a charge made, upon reasonable cause, of the commission of a felony by the party arrested.

5. At night, when there is reasonable cause to believe that he has committed a felony.

6. When at the scene of a domestic disturbance there is reasonable cause to believe, based on physical evidence observed by the officer or statements made in the presence of an officer upon immediate response to a report of a commission of such a crime, that the person arrested has committed an assault or battery.[1]

*Id.*

■ We note that in interpreting the arrest statute the district court concluded:

The remaining provision in the arrest statute, I.C. § 19–603(6), permits arrest for a domestic battery only "[w]hen at the scene of a domestic disturbance...." The arrest took place at the hospital, and there is no allegation in the record that any domestic disturbance occurred at the hospital. The citation issued to Julian upon his arrest indicates that the offense for which Julian was arrested took place at "2011 Ridge Point Wy., Boise." The same citation states that the arrest took place at the "St. Luke's E.R. parking lot." There is no evidence in the record to support the conclusion that Julian was arrested at the scene of a domestic disturbance. The pertinent facts conceded by the state establish

that Julian's arrest exceeded the scope of the arrest statute.

The district court also held that because Julian was arrested for domestic battery, the subsections in the arrest statute dealing with warrantless felony arrest were facially inapplicable. We disagree and hold that the fact that the officers cited Julian for domestic battery does not render the other subsections of the arrest statute facially inapplicable. Because we so hold we need not interpret the "when at the scene of a domestic disturbance" requirement of I.C. § 19–603(6).

■ In addition to allowing an officer to make an arrest for the commission of the crimes enumerated in subsection 6, the arrest statute allows for a warrantless felony arrest based upon reasonable cause. I.C. § 19–603(3). Reasonable or probable cause is the possession of information that would lead a person of ordinary care and prudence to believe or entertain an honest and strong presumption that such person is guilty. *State v. Alger,* 100 Idaho 675, 677, 603 P.2d 1009, 1011 (1979). Probable cause is not measured by the same level of proof required for conviction. *Id.* Rather, it deals with "the factual and practical considerations of everyday life on which reasonable and prudent [persons], not legal technicians, act." *Id.* (quoting *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949)).

■ When reviewing an officer's actions the court must judge the facts against an objective standard. That is, "would the facts available to the officer at the moment of the seizure or search 'warrant a [person] of reasonable caution in the belief' that the action taken was appropriate." *State v. Hobson,* 95 Idaho 920, 925, 523 P.2d 523, 528 (1974) (quoting *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)). Because the facts making up a probable cause determination are viewed from an ob-

---

**1.** The 1994 Idaho Legislature amended I.C. § 19–603, effective one month after Julian's arrest. The amended version added a subsection dealing with hijacking and amended subsection 6 to read:

[W]hen at the scene of a domestic disturbance there is reasonable cause to believe, based upon physical evidence observed by the officer

or statements made in the presence of the officer upon immediate response to a report of a commission of such a crime, that the person arrested has committed a violation of section 18–902 (assault), 18–903 (battery), 18–918 (domestic assault or battery), 18–7905 (stalking), or 39–6312 (violation of a protection order).

jective standpoint, the officer's subjective beliefs concerning that determination are not material. *See, e.g., State v. Middleton,* 114 Idaho 377, 381, 757 P.2d 240, 244 (Ct.App. 1988); *State v. Cootz,* 110 Idaho 807, 811, 718 P.2d 1245, 1249 (1986); *see also, Klingler v. United States,* 409 F.2d 299, 304 (8th Cir. 1969). In *Klingler,* the Eight Circuit Court of Appeals stated:

> Because probable cause for an arrest is determined by objective facts, it is immaterial that [the arresting officer], at the hearing on the motion to suppress, testified that he did not think he had "enough facts" upon which to arrest Klingler for armed robbery. His subjective opinion is not material. A constitutional safeguard predicated on an objective standard requires an even-handed application. From the standpoint of the individual, the figurative zone protecting his privacy and personal integrity may be encroached under the law only by facts and circumstances totaling probable cause for arrest. From the standpoint of the government, application of the principle of probable cause must allow room for some mistakes by the arresting officer. As Mr. Justice Rutledge stated in *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949): "[t]hese long-prevailing standards [of probable cause] seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusion of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would

be to leave law-abiding citizens at the mercy of the officer's whim or caprice."

*Klingler,* 409 F.2d at 304 (Citations omitted). Accordingly, we conclude that the officer's decision to cite Julian for domestic battery does not foreclose an inquiry into whether an objective assessment of the facts present at the moment of arrest would lead a person of ordinary prudence to conclude that probable cause existed to arrest Julian for a felony arising from the same operative facts supporting the domestic battery arrest, *i.e.* aggravated battery.

█ Furthermore, we hold that an objective assessment of the facts as found by the district court gave the deputies probable cause to arrest Julian for aggravated battery. The district court found that in the late evening of May 20, 1994, Julian, in an apparently jealous state, telephoned an acquaintance who had sent Mrs. Julian some flowers. Following the telephone conversation, there was a struggle between the Julians and, during the course of that struggle, Mrs. Julian's arm was broken. After receiving Mrs. Julian's mistakenly placed call, the acquaintance telephoned an Ada County dispatcher to report that Mrs. Julian was being battered by Julian. Upon entry in the Julian home, the deputies observed what appeared to be signs of a struggle, including a piece of cloth that appeared to have blood on it.[2] The deputies were informed that Mrs. Julian was at the St. Luke's Regional Medical Center emergency room being treated for a broken arm. After a short conversation with Mrs. Julian, the interviewing deputy gave the other deputies the sign to arrest Julian.

We believe that the possession of these facts, when viewed from an objective standpoint, would warrant a person of ordinary prudence to conclude that probable cause existed to arrest Julian for a felony, *i.e.* aggravated battery. The arrest statute allows the warrantless arrest of a person when a felony has been committed and the arresting officer has reasonable cause to believe the person arrested has committed it. I.C.

---

**2.** In his motion to suppress, Julian also argued for suppression of any evidence allegedly observed by the deputies after they entered his residence without a warrant. The district court concluded that the deputies' entry into the home

was not unreasonable and refused to suppress evidence of the items observed by the deputies while inside the Julian home. Julian has not cross-appealed the district court's ruling in this regard.

§ 19–603. It also allows for a warrantless arrest at night when there is reasonable cause to believe that the arrested person has committed a felony. I.C. § 19–603(5). Because we find that probable cause existed to arrest Julian for aggravated battery, the deputies were within the scope of either subsection of the arrest statute when they arrested Julian.

LANSING, J. Pro Tem., concurs.

**B. The Arresting Officer Informed Julian Of The Cause Of His Arrest As Required by I.C. § 19–608.**

Julian asserts, and the district court held, that if his underlying arrest is validated under a different charge than that for which he was originally cited, he was not informed of "the cause of the arrest" as required by I.C. § 19–608. We do not agree.

In pertinent part I.C. § 19–608 states that "[t]he person making the arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it ..." It is worthy to note that the statute requires that the person being arrested be informed of the "cause of the arrest," not the charge for which he might eventually be made to answer. *Compare* I.C. § 19–613 and I.C.R. 5 (stating when arrested persons must be informed of the "charges" against them). To read "cause of the arrest" as what the defendant may be charged with would require an arresting officer to inform the person of every possible crime for which probable cause might be said to exist.

Further, there can be little doubt that Julian was informed that the reason for his arrest was the alleged battery committed upon his wife. *Cf., Sprague v. City of Burley,* 109 Idaho 656, 667, 710 P.2d 566, 577 (1985) (using "reason for the arrest" and "cause of the arrest" interchangeably). The fact that Julian was subsequently charged with a related crime, albeit a different charge than that for which he was cited, does not vitiate the deputies' original compliance with the statute at the time of arrest. Accordingly, we reverse the decision of the district court that Julian was not informed of the cause of his arrest.

WALTERS, LANSING and DRESCHER, JJ. Pro Tem., concur.

## V.

## CONCLUSION

We hold that Julian's arrest was not unlawful. Accordingly, we reverse the district court's order suppressing evidence seized from Julian following his arrest and remand for further proceedings.

We also reverse the conclusion of the district court that Julian was not informed of the "cause of the arrest" as required by I.C. § 19–608.

The case is reversed and remanded for further proceedings.

WALTERS, LANSING and DRESCHER, JJ. Pro Tem., concur.

WALTERS, Justice Pro Tem., specially concurring.

I concur with the conclusion reached in the foregoing opinion to the effect that Julian was informed of the cause of his arrest as required by I.C. § 19–608.

The Court's lead opinion ably and thoughtfully applies the holding of *Klingler v. United States,* 409 F.2d 299 (8th Cir.1969). However, I believe the issues of this case can be decided by construing Idaho Code § 19–603(6) alone, and thus write separately. In my view, the district court erred in its interpretation and application of I.C. § 19–603(6). To the contrary, I think Julian's arrest for domestic battery was proper and that his motion to suppress evidence seized following his arrest should not have been granted by the district court. Accordingly, I agree that the district court's order granting Julian's suppression motion on the ground that the evidence was discovered during a search after an illegal arrest, should be reversed.

The crime for which Julian was arrested, domestic battery, was created by the legislature in 1993. *1993 Idaho Sess. Laws,* ch.

344, § 1, p. 1283. Codified as I.C. § 18–918, the statute provides:

(1) For the purpose of this section, "adult household member" means a person who is eighteen (18) years of age or older and is a spouse, former spouse, or a person who has a child in common regardless of whether they have been married or have lived together at any time.

. . .

(3) An adult household member who commits a battery, as defined in section 18–903, Idaho Code, against another household member is guilty of domestic battery.

Subsection (4) of the statute sets forth three penalties for domestic battery. Under that subsection, a domestic battery may be a misdemeanor, or a felony, depending upon the offender's prior record of convictions for the same offense, provided that the prior conviction or convictions occurred within specified periods of time. The citation given to Julian when he was arrested recited that he was charged with misdemeanor domestic battery.

Julian moved to suppress the cocaine found in his possession during the search following his arrest, asserting that his arrest was illegal because he was arrested without a warrant upon a charge of misdemeanor domestic battery and his arrest did not occur at a location where any act of alleged domestic violence had occurred. In response to Julian's motion, the state contended that Julian's arrest was valid and legal.

The district court recognized that the legality of an arrest is governed by state law and, in Julian's case, the particular rules authorizing warrantless arrests. In this regard, the district court focused on Idaho Code § 19–603, the statute defining the arrest powers of peace officers. That statute, as it existed when Julian was arrested, recited:

**When Peace Officer May Arrest.** A peace officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person:

(1) For a public offense committed or attempted in his presence.

(2) When a person arrested has committed a felony, although not in his presence.

(3) When a felony has been committed and he has reasonable cause for believing the person arrested to have committed it.

(4) On a charge made, upon reasonable cause, of the commission of a felony by the party arrested.

(5) At night, when there is reasonable cause to believe that he has committed a felony.

*(6) When at the scene of a domestic disturbance there is reasonable cause to believe, based upon physical evidence observed by the officer or statements made in the presence of the officer upon immediate response to a report of a commission of such a crime, that the person arrested has committed an assault or battery.* [Emphasis supplied.]

In analyzing the application of I.C. § 19–603 to Julian's case, the district court held:

In this case, there is no dispute that the deputies arrested Julian for domestic battery. All of the officers testified at the preliminary hearing that Julian was arrested for domestic battery, and the citation issued to Julian indicates that Julian was arrested for misdemeanor battery. Because domestic battery is a misdemeanor charge, I.C. § 18–918(3), sections two, three, four and five of the arrest statute are facially inapplicable. None of the officers testified that they were aware any offense was being committed in their presence prior to or at the time of arrest [as referred to in I.C. § 19–603(1) ].

The remaining provision in the arrest statute, I.C. § 19–603(6), permits arrest for a domestic battery only "[w]hen at the scene of a domestic disturbance...." The arrest took place at the hospital, and there is no allegation in the record that any domestic disturbance occurred at the hospital. The citation issued to Julian upon his arrest indicates that the offense for which Julian was arrested took place at [Julian's home address, and] the same citation states that the arrest took place at the "St. Luke's E.R. parking lot." There is no evidence in the record to support the conclusion that Julian was arrested at the scene of a domestic disturbance. The pertinent facts conceded by the state establish

that Julian's arrest exceeded the scope of the arrest statute.

I think the district court erred in concluding that an arrest, without a warrant, is valid under I.C. § 19–603(6) only when the arrest is effected at the scene or location where the domestic disturbance has taken place. In my opinion, I.C. § 19–603(6) does not evince any legislative intent to specify *where* the arrest may occur. My conclusion results from a review of the legislative history of subsection 6 of I.C. § 19–603.

Subsection 6 of I.C. § 19–603 has as its genesis Senate Bill 1174 which was introduced in 1979 during the first regular session of the 45th Legislature.[3] The title to Senate Bill 1174 recited:

RELATING TO WHEN PEACE OFFICERS MAY ARREST; AMENDING SECTION 19–603, IDAHO CODE, BY PROVIDING FOR ARRESTS WHEN THERE IS REASONABLE CAUSE TO BELIEVE THAT THE PERSON ARRESTED HAS COMMITTED AN ASSAULT OR BATTERY.

Following recitation of the provisions of then existing I.C. § 19–603, including subsections 1 through 5, Senate Bill 1174 proposed the addition of a new subsection, number 6, reading as follows:

6. When there is reasonable cause to believe that the person arrested has committed an assault or battery.

Clearly, neither the title nor the text of the proposed amendment indicated that an arrest, to be valid, must occur either in the presence of the arresting officers or at the "scene" where the alleged assault or battery had occurred. Instead, the focus of the proposal seems to have been upon the point in time when "reasonable cause" may be found to exist so as to permit an arrest without a warrant.

After the Idaho Senate had adopted Senate Bill 1174, the bill was sent to the Idaho

House of Representatives for consideration. There, the bill was referred to the House Judiciary, Rules and Administration Committee for an initial review and recommendation. According to a copy of the minutes of that Committee dated March 19, 1979 (attached as an appendix to the state's brief on the appeal in this case), Senator Black appeared before the Committee, and the following action was taken with respect to Senate Bill 1174:

Arrest for reasonable cause in assault and battery cases. Senator Black said this bill was designed to permit a police officer to arrest a person who is battering a family member to put an immediate stop to the violent situation. Rep. Paxman asked why under present law a police officer could not make such an arrest. Rep. McDermott replied that under present law a police officer cannot arrest under assault because it is a misdemeanor. A police officer can only arrest for a misdemeanor if he is an actual witness. He can arrest for a felony with reasonable cause.

Lloyd Webb spoke in opposition to this bill because it is in effect a warrantless arrest that could be expanded to other than domestic relations matters.[4] Rep. McDermott asked if Mr. Webb would be willing to draft something that would limit it to domestic relations matters.

Rep. Harris moved that [Senate Bill] 1174 be sent to the floor with a "do pass" recommendation. Motion seconded by Rep. Smith. Rep. McDermott made an amended motion that [Senate Bill] 1174 be sent to general orders with amendments attached. Motion seconded by Rep. Horvath. *The motion carried.* Chairman Stivers asked Mr. Webb, Senator Black, and Jane Leeson to immediately prepare an amendment to the bill that would eliminate Mr. Webb's problem with the bill. [Emphasis in original; footnote added.]

---

**3.** Neither Senate Bill 1174 nor the subsequent amendment proposed by the Idaho House of Representatives to Senate Bill 1174 were submitted as part of the appellate record in this case. Those documents, however, are contained in the public records maintained by the Office of Legis-

lative Services located in the State Capitol Building.

**4.** At the time, Mr. Webb was an attorney practicing in Twin Falls, and was the President of the Idaho Trial Lawyers Association.

The bill was then presented to the floor of the House in an amended form. With the amendment underlined, the submitted bill read as follows:

> 6. When *at the scene of a domestic disturbance there is reasonable cause to believe, based upon physical evidence observed by the officer or statements made in the presence of the officer upon immediate response to a report of a commission of such a crime, that the* person arrested had committed an assault or battery.

The title to the bill remained the same: "Relating to when peace officers may arrest; amending section 19–603, Idaho Code, by providing for arrests when there is reasonable cause to believe that the person arrested has committed an assault or battery." The title refers only to *when, i.e.,* the circumstances (existence of reasonable cause) under which an officer may make an arrest, not to *where* the arrest may occur.[5]

The bill, as amended, passed the House by a vote of 69 to 1 and was returned to the Senate. The Senate approved the amendment to the bill made by the House, and Senate Bill 1174 (as amended) was signed into law by Governor John Evans on April 3, 1979. *See 1979 Idaho Sess. Laws,* ch. 307, § 1, p. 832. This enactment was codified as I.C. § 19–603(6).

The interpretation given to I.C. § 19–603(6) by the district court below seems to have reworded, and added to, the statute's provisions. As applied by the district court, the relevant portion of the statute, I.C. § 19–603, in shortened form would read:

> A peace officer may, without a warrant, arrest a person *only* at the scene of a domestic disturbance and *when* there is reasonable cause to believe the person arrested has committed an assault or battery.

To the contrary, I find nothing in the history of this legislation indicating that the Idaho Legislature intended that an arrest for a battery which happened during a domestic disturbance must be made only at the site where the disturbance occurred. Certainly, the enactment of subsection 6 of I.C. § 19–603 overrides the provision in subsection 1 which authorizes a warrantless arrest for a misdemeanor only where the misdemeanor has occurred in the presence of the arresting officer.[6]

Instead, based on the legislative background regarding the insertion of the words "at the scene of a domestic disturbance" into the statute, I believe the phrase "when at the scene," refers only to the *circumstance* giving rise to the existence of reasonable cause on the part of a peace officer who has responded to a report of the disturbance. The statute provides that such an officer, who has reasonable cause based upon his observation of physical evidence at that scene and considering any statements made to the officer, may make an arrest of the person who has committed an assault or battery. The reference to "the scene" can only mean the location where the *information* is generated which gives rise to reasonable cause on the part of the officer in order to subsequently arrest the offender.[7] The statute does not require that the person arrested still be at the scene of the antecedent disturbance, or, indeed, at any specified location.[8]

---

5. For the purpose of the appellate review in this case, it is well settled that a court may consider the title included with enacted legislation, in order to ascertain the intended scope of the legislation. *State v. Mead,* 61 Idaho 449, 102 P.2d 915 (1940).

6. When a statute is amended, it is presumed that the legislature intended the statute to have a meaning different from that accorded to it before the amendment. *Lincoln County v. Fidelity & Deposit Company of Maryland,* 102 Idaho 489, 632 P.2d 678 (1981).

7. The same may be true with respect to the recent amendments to subsection 6 to include the crime of stalking and for violation of protec-

tion orders, recognized in footnote 1, *ante,* which may or may not have occurred precisely at the scene of a domestic disturbance but where sufficient information is gleaned from that scene to give an officer reasonable cause to believe that the crime or violation has occurred previously at any location.

8. This conclusion parallels other provisions in § 19–603, *i.e.,* subsections 2, 3, 4 and 5, which likewise do not make the validity of an arrest depend upon the location where the arrested person is found.

It stands to reason that the officer may then arrest the offender wherever the offender may be found. This approach comports with the indicated intent of the legislature in enacting subsection 6 of I.C. § 19–603. An offender should not be allowed to circumvent the intent of the legislature allowing warrantless arrests for assaults and batteries committed during domestic disturbances, and insulate himself or herself from an immediate arrest, by leaving the "scene" of such a disturbance and going to another location or other part of an area where the disturbance may have occurred, whether it be to another room, another building, another yard, or by going into the street, across the street, or moving a block or two away, or by taking the victim to a hospital for treatment. The location of the offender when the arrest is effected is simply not an element of the authority given to peace officers by the legislature in order to make a warrantless arrest under I.C. § 19–603(6) for having committed an assault or battery during a domestic disturbance.

Consequently, I conclude that the district court erred when it determined that Julian's arrest was invalid. Because the arrest was valid, the order by the district court, granting Julian's motion to suppress the evidence found in conjunction with his arrest, should be reversed.

DRESCHER, J. Pro Tem., concurs.

JOHNSON, Justice, dissenting.

I respectfully dissent from the result reached by the Court. In my view, it is not proper to validate an arrest after the fact for a crime that was not the basis for the arrest.

First, I read I.C. § 19–603(6) to allow a warrantless arrest for a domestic disturbance only "at the scene." Even if it were ambiguous, however, this would require that it be strictly construed in the defendant's favor. *State v. Barnes,* 124 Idaho 379, 380, 859 P.2d 1387, 1388 (1993).

Second, I cannot accept that an appellate court may objectively review the facts, after the fact, to find probable cause for an arrest that was not made or even contemplated by the officers. I find *Klingler v. United States,* 409 F.2d 299 (8th Cir.1969) to be unpersuasive. In *Klingler,* the Eighth Circuit interpreted South Dakota arrest law. I would prefer to interpret Idaho arrest law without deferring to a federal court's interpretation of another state's law.

Third, the arrest of Julian for a crime of which he was not informed, clearly violates I.C. § 19–608.