**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 47291**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: September 21, 2020** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| TANYA ELAINE WHITE, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. George Carey, Senior District Judge.

Order denying motion to suppress, <u>affirmed</u>; order denying I.C.R. 36 motion, <u>reversed</u>; judgment of conviction for possession of methamphetamine, <u>affirmed</u>; <u>case remanded</u> to district court to re-enter judgment of conviction with sentence to reflect a unified term of imprisonment of three years with one year determinate.

Eric D. Fredericksen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Tanya Elaine White appeals from her judgment of conviction for possession of a controlled substance (methamphetamine). White argues that the district court erred by denying her motion to suppress and her Idaho Criminal Rule 36 motion. For the reasons set forth below, we affirm in part and reverse in part.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

White was charged with possession of a controlled substance (methamphetamine), Idaho Code § 37-2732(c)(1), and possession of paraphernalia, I.C. § 37-2734A(1). The charges arose after Deputy Brock observed a woman exit a Walmart and enter a green vehicle, which was

1

parked on the sidewalk of the store entrance, containing a male driver (Mann) and a male passenger, White's son (Tristan). Deputy Brock observed all three of the vehicle occupants look at him and then look ahead. Deputy Brock thought the occupant's behavior upon noticing his presence was "very odd." Deputy Brock traveled behind the vehicle as it headed toward an exit. While driving, the occupants continued to look over their shoulders and in the mirrors at Deputy Brock. Subsequently, the vehicle turned and appeared to be heading toward an entrance. At that time, Deputy Brock engaged in and processed an unrelated traffic stop. While doing so, he observed the green vehicle park at a nearby restaurant. While parked, the occupants watched Deputy Brock. After processing the traffic stop, Deputy Brock returned to the store parking lot and witnessed the green vehicle pull into a parking stall at the store. At that time, Mann and White exited the vehicle and entered the store. The pair watched Deputy Brock as they entered the store. Thereafter, Mann exited the store, saw Deputy Brock, and re-entered the store again.

Because of their suspicious behavior, Deputy Brock parked his patrol vehicle, approached the green vehicle, and engaged in a consensual encounter with the remaining passenger, Tristan. Deputy Brock could smell the odor of marijuana as he approached the vehicle. Deputy Brock engaged in a conversation with Tristan without mentioning the odor. During the conversation, Tristan agreed with Deputy Brock that Mann and White's behavior was odd. In addition, Tristan admitted that there was marijuana in the trunk of the vehicle and he was "pretty sure" that Mann was smoking marijuana. During Deputy Brock's interaction with Tristan, Deputy Ellis and Deputy Norris arrived on scene. Deputy Norris stayed with the vehicle and conducted a search while Deputy Ellis and Deputy Brock went into the store to locate White and Mann.

While walking into the store, Deputy Brock informed Deputy Ellis that he had been "playing cat and mouse" with the couple in the parking lot and that they had "probably grabbed some other stuff from the car" before entering the store. Deputy Brock located White and Mann in the middle of the store. The deputies placed both White and Mann in handcuffs, advised them they were being detained, escorted them back to the vehicle, and read them their *Miranda*[1] rights.

While the other deputies were in the store, Deputy Norris located marijuana and a pipe in the vehicle. He informed Deputy Brock of his discovery and Deputy Brock questioned White about the marijuana. White asked if her son, Tristan, had been arrested. Deputy Brock asked

---

[1]     *See Miranda v. Arizona*, 384 U.S. 436 (1966).

2

White if they were avoiding him for "a little bit of weed." In response to his question, White explained that she and Mann were on probation. In addition, White claimed that the marijuana belonged to her. Subsequently, it was discovered that the marijuana belonged to Tristan. White admitted that she claimed the marijuana belonged to her in order to protect Tristan. Thereafter, Deputy Norris located a purse in the vehicle which contained a pipe, used syringes, and a substance consistent with methamphetamine. Deputy Brock confronted White with the purse and, among other things, White stated "Can you not open that up in front of my son?" Later, Deputy Ellis informed Deputy Brock that security footage from the store depicted Mann and White going into the bathroom after entering the store for the second time. Deputy Ellis recovered a bag with methamphetamine residue inside the bathroom trash can.

Ultimately, White was arrested and charged with the above-listed offenses. White filed a motion to suppress the statements[2] she made after she was handcuffed in the store. In her brief in support of her motion, White argued that she was arrested when the deputy handcuffed her in the store and her arrest was not supported by probable cause. In its brief in opposition to White's motion, the State made numerous alternative arguments. The parties stipulated to the introduction of the police report and Deputy Brock's body camera and rested on their briefing. Without considering the parties' alternative arguments, the district court concluded that White's seizure was an investigatory detention which was properly supported by reasonable suspicion. Consequently, the district court denied White's motion to suppress. In exchange for the State dismissing the paraphernalia charge, White agreed to enter a conditional guilty plea to possession of methamphetamine. In doing so, White reserved her right to appeal the district court's denial of her motion to suppress.

At the sentencing hearing, the district court orally sentenced White to a unified term of three years with one year determinate, suspended the sentence, and placed White on probation for a period of two years. The court's written judgment of conviction set forth a unified four-year term with two years determinate. Consequently, White filed an I.C.R. 36 motion to correct the clerical error in her sentence. The district court denied her I.C.R. 36 motion. White timely appeals.

---

[2]     White did not move to suppress the drugs or paraphernalia. On appeal she focuses primarily on her statement that the marijuana belonged to her and her request that Deputy Brock not open the purse in front of her son as the statements she seeks to suppress.

## II.

## ANALYSIS

White argues that the district court erred by denying her motion to suppress and her I.C.R. 36 motion to correct a clerical error in the judgment. We will address each of her contentions in turn below.

## A.     Motion to Suppress

White argues that the district court erred in denying her motion to suppress because her seizure amounted to an arrest and her arrest was not supported by probable cause. In response, the State argues that the district court did not err in denying White's motion because (1) White's seizure only amounted to an investigative detention; (2) even if White was arrested, her arrest was supported by probable cause; and (3) regardless, proper application of the attenuation doctrine precludes suppression of White's statements.

Generally, the standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999). However, the Idaho Supreme Court has recently stated that, in the "unusual situation" where the appellate court has before it exactly the same evidence as was considered by the district court, the appellate court may "freely review the evidence and weigh the evidence in the same manner as the trial court would do." *State v. Anderson*, 164 Idaho 309, 312, 429 P.3d 850, 853 (2018) (quoting *State v. Lankford*, 162 Idaho 477, 492, 399 P.3d 804, 819 (2017)).

### 1.     Detention

White argues that the district court erred in concluding that her seizure was an investigative detention. Specifically, White contends that under the totality of the circumstances, the deputy's use of handcuffs to seize and remove her from the store was unjustified and transformed her seizure into an arrest which was not supported by probable cause. In response, the State argues that the district court correctly concluded that White's seizure was a detention

and the circumstances of the encounter justified the deputy's use of handcuffs. Based on the arguments presented, we must first consider whether White's seizure amounted to an investigative detention or a de facto arrest.

An investigative detention is permissible if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). Such a detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002). "[T]here is no bright line rule to determine when an investigatory detention has become an arrest." *State v. Buti*, 131 Idaho 793, 796, 964 P.2d 660, 663 (1998). Instead, courts must consider all the surrounding circumstances to determine whether the use of investigative methods, like utilizing handcuffs, were unreasonable. *State v. DuValt*, 131 Idaho 550, 554, 961 P.2d 641, 645 (1998). If an investigative detention becomes unreasonable, the detention is transformed into an arrest. *State v. Pannell*, 127 Idaho 420, 423, 901 P.2d 1321, 1324 (1995).

However, officers are "authorized to take such steps [that are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *United States v. Hensley*, 469 U.S. 221, 235 (1985); *see also State v. Johns*, 112 Idaho 873, 878, 736 P.2d 1327, 1332 (1987) (concluding that officer was justified in using handcuffs and placing defendant in patrol vehicle to maintain the status quo when conducting investigative detention because "[s]trong but reasonable measures to insure [sic] the safety of the officers or the public can be taken without necessarily compelling a finding that the suspect was in custody"). Additional factors to be considered in distinguishing an investigative stop from a de facto arrest include the seriousness of the crime, the location of the encounter, the length of the detention, the reasonableness of the officer's display of force, and the conduct of the suspect as the encounter unfolds. *State v. Martinez*, 129 Idaho 426, 431, 925 P.2d 1125, 1130 (Ct. App. 1996).

In this case, the district court concluded that because of the risk of flight during the detention, the circumstances justified the deputy's use of handcuffs. We agree. We conclude that the district court did not err in determining that White was reasonably detained when the deputy used handcuffs to safely effectuate White's detention. The circumstances presented justified Deputy Brock's use of handcuffs. First, the risk of flight was substantial. White, Mann,

and Tristan engaged in highly suspicious behavior and had already demonstrated a concerted effort to evade Deputy Brock. All three occupants suspiciously watched the deputy in their vehicle mirrors after White exited the store and while driving toward an exit. Instead of exiting, they turned toward an entrance and eventually parked their vehicle in a nearby parking lot. While in the nearby parking lot, White, Mann, and Tristan watched while Deputy Brock was engaging in an unrelated traffic stop. Additionally, and although White had previously left the store, both White and Mann watched Deputy Brock while they entered the store for a second time. Later, Mann exited the store, looked for and noticed Deputy Brock, and re-entered the store.

Although White contends that handcuffing her was not justified because she was cooperative with the deputies when she was approached in the store, it was her conduct that ensued upon noticing law enforcement's presence that established the risk of flight. The occupants were hyperaware of Deputy Brock's presence and were playing "cat and mouse" with him in an attempt to avoid him. It was clear from their behavior that White, Mann, and Tristan were engaging in a concerted effort to watch and elude Deputy Brock. White's behavior, even before she was detained, demonstrated that she was an objective flight risk.

Second, it was reasonable to handcuff White in order to maintain the status quo. *See Hensley*, 469 U.S. at 235. During the encounter, the deputies were monitoring two separate scenes. In one location, Deputy Norris was engaging in a vehicle search because Deputy Brock smelled the odor of marijuana and Tristan admitted that marijuana was located in the vehicle. In the other location, the deputies were searching through a large and busy retail store to locate two suspects. After locating White and Mann in the middle of the store, it was reasonable for Deputy Brock to handcuff White in order to safely and quickly transport her back to the vehicle and pursue his investigation.

Third, use of the handcuffs was reasonable to prevent the potential consequences of flight. There were two individuals, White and Mann, located and detained in the store. The potential flight of two suspects in a crowded department store could cause a risk of harm to the public, property damage, and unnecessary mayhem. In addition, it must be noted that the situation presented in this case is distinguishable from other cases in which the defendant argues that his seizure rose to the level of a de facto arrest. Generally, this argument has been raised in the context of a vehicle stop and involves the officer both handcuffing the defendant and placing

6

the defendant in the back of the patrol vehicle. *See Johns*, 112 Idaho at 878, 736 P.2d at 1332; *see also Pannell*, 127 Idaho at 423, 901 P.2d at 1324. Here, the seizure occurred in a department store and was necessary to transport White from the store to the vehicle where a search was occurring. In addition, Deputy Brock's use of force, and the resulting restraint on White's liberty, did not include placing her in a patrol vehicle. The cases relied on by White are distinguishable. Under the totality of the circumstances, Deputy Brock's use of handcuffs in order to detain White and transfer her from a crowded store to the vehicle in order to effectuate an investigation was reasonable. Because White's detention was reasonable, the district court did not err in denying White's motion to suppress.

### 2. Probable cause

White claims that her arrest was not supported by probable cause and the district court should have suppressed her subsequent statements. Specifically, White contends that the circumstances did not give rise to probable cause because she had every right to avoid the deputy and the fact that she was with Mann, a person who had been smoking marijuana, does not implicate her. White claims that "at best, the deputies had reasonable suspicion of criminal activity due to Ms. White being in the car with Mr. Mann, but the deputies could not arrest her simply for her association with him." In response, the State argues that based on the facts Deputy Brock knew when he handcuffed White, Deputy Brock had probable cause to arrest White in the store.

"[A] warrantless arrest by a law officer is reasonable and lawful under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *State v. Lee*, 162 Idaho 642, 649, 402 P.3d 1095, 1102 (2017) (brackets omitted). Probable cause is the possession of information that would lead a person of ordinary care and prudence to believe or entertain an honest and strong presumption that a person they have placed under arrest is guilty of a crime. *See State v. Julian*, 129 Idaho 133, 136, 922 P.2d 1059, 1062 (1996). Probable cause is not measured by the same level of proof required for conviction. *Id*. Rather, probable cause deals with the factual and practical considerations on which reasonable and prudent persons act. *Brinegar v. United States*, 338 U.S. 160, 175 (1949); *Julian*, 129 Idaho at 136, 922 P.2d at 1062. When reviewing an officer's actions, the court must judge the facts against an objective standard. *Julian*, 129 Idaho at 136, 922 P.2d at 1062. That is, would the facts available to the officer, at the moment of the seizure or search, warrant a reasonable person

7

in holding the belief that the action taken was appropriate. *Id.* A probable cause analysis must allow room for mistakes on the part of the arresting officer but only the mistakes of a reasonable person acting on facts which sensibly led to his or her conclusions of probability. *State v. Kerley*, 134 Idaho 870, 874, 11 P.3d 489, 493 (Ct. App. 2000).

We conclude that White's seizure was supported by probable cause. The facts available to Deputy Brock when he seized White support a finding of probable case. In this case, before Deputy Brock located and handcuffed White in the store, he had observed White as a passenger in the green vehicle, had smelled the odor of marijuana coming from the vehicle, was informed that Mann was smoking marijuana, and was told by an occupant of the vehicle that there was marijuana located in the vehicle's trunk. In addition, and as discussed above, all of the vehicle occupants were acting suspicious and were engaging in a prolonged and concerted effort to elude Deputy Brock. *See State v. Greene*, 100 Idaho 464, 466, 600 P.2d 140, 142 (1979) (explaining "[s]uspicious behavior of a defendant when he becomes aware of the police is a circumstance that can link him to drugs found on the premises of which he is in non-exclusive possession").

Based on these facts, the State cites to *Maryland v. Pringle*, 540 U.S. 366 (2003) and argues that the circumstances suggest that all of the occupants had knowledge or exercised control over the drugs, therefore the deputies had probable cause to arrest all of the vehicle's occupants, including White. We agree. In *Pringle*, police initiated a traffic stop on a vehicle containing three people, found cocaine and cash, and arrested all three of the occupants. Pringle filed a motion to suppress and argued that officers lacked probable cause to arrest him. In analyzing the facts, the Supreme Court explained that a car passenger

> will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing. Here we think it was reasonable for the officer to infer a common enterprise among the three men. The quantity of drugs and cash in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him.

*Id*. at 373 (internal citation omitted). The Court determined that "a reasonable officer could conclude that there was probable cause to believe Pringle committed the crime of possession of cocaine, either solely or jointly." *Id.* at 372.

In this case, all of the occupants were active participants in evading the police, and Deputy Brock was aware that drugs were present in the vehicle. Although Tristan informed Deputy Brock that Mann, not White, was smoking marijuana, the evidence, like the evidence

8

presented in *Pringle*, suggests that all of the vehicle occupants were engaged in a common enterprise. Accordingly, it was not unreasonable for Deputy Brock to believe that White possessed marijuana, either solely or jointly, when he seized her. *Id*. at 372. Thus, the facts available to Deputy Brock at the moment of White's seizure amounted to probable cause. Therefore, the district court did not err in denying White's motion to suppress her statements because, even if her seizure amounted to an arrest, her arrest was adequately supported by probable cause.

### 3. Attenuation doctrine

The State argues that even if White was arrested in the store but Deputy Brock lacked sufficient probable cause, the attenuation doctrine precludes suppression of White's statements.

Under the federal constitution, applying the exclusionary rule and suppressing evidence is done for two purposes: (1) to deter lawless conduct by law enforcement, and (2) to close the doors of the courts to any use of evidence unconstitutionally obtained. *Wong Sun v. United States*, 371 U.S. 471, 486 (1963). The attenuation doctrine analyzes situations where there is some Fourth Amendment violation and the court must determine whether the resulting evidence was obtained by exploitation of that illegality or instead, by means sufficiently attenuated from that illegality such that the taint of the illegality is purged. *See Brown v. Illinois*, 422 U.S. 590 (1975). Thus, the attenuation doctrine permits the use of evidence that would normally be suppressed as fruit of police misconduct if the causal chain between the misconduct and the discovery of the evidence has been sufficiently attenuated. *Nardone v. United States*, 308 U.S. 338, 341 (1939); *State v. Hoak*, 107 Idaho 742, 749, 692 P.2d 1174, 1181 (1984). In applying the attenuation doctrine, the test is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun*, 371 U.S. at 488. The Idaho Supreme Court has employed the three-factor test from *Brown* to determine attenuation: (1) the elapsed time between the misconduct and the acquisition of the evidence; (2) the occurrence of intervening circumstances; and (3) the flagrancy and purpose of the police misconduct. *State v. Page*, 140 Idaho 841, 846, 103 P.3d 454, 459 (2004).

Here, the State concedes that the time between the purported misconduct and the acquisition of the evidence weighs in favor of White. However, the State argues that the discovery of the marijuana and the methamphetamine and Deputy Brock's giving of *Miranda*

9

warnings before White made the challenged statements are intervening circumstances that purge the primary taint. Additionally, the State argues that there is no indication that Deputy Brock handcuffed White in bad faith and, if handcuffing White transformed White's detention into an illegal arrest, the use of handcuffs was not flagrant. In response, White cites to various cases and argues that, based on those cases, none of the factors weigh in favor of the State. White contends that she made the statements during her illegal arrest and "no intervening event broke the 'causal chain such that' her statements were sufficiently attenuated from the deputies' illegal action."[3]

We agree with the State. We conclude that regardless of any police illegality, the attenuation doctrine negates suppression of White's statements. As the State concedes, a minimal amount of time elapsed between the illegal arrest and White's statements. However, the remaining factors weigh in favor of the State. First, the deputies discovered marijuana and methamphetamine in the vehicle before White stated that the marijuana belonged to her or asked the deputy not to open the purse. Her statements were not a product of the police illegality (i.e. her arrest). Rather, her statements were a product of the intervening circumstances.

Second, the officer's conduct was not flagrant and there was no indication that Deputy Brock handcuffed White in an effort to get her to make incriminating statements. Although White cites to various United States Supreme Court case law in which the Court concluded that the challenged evidence was obtained by the exploitation of the defendant's illegal arrest and argues that the police conduct in this case was similarly egregious, we are not persuaded by White's argument. *See Brown*, 422 U.S. at 592-96; *Dunaway v. New York*, 442 U.S. 200, 203 (1979); *Kaupp v.* Texas, 538 U.S. 626, 627-30 (2003). Unlike those cases in which the officer engaged in an unlawful arrest, transported the defendant to the police station, and induced incriminating statements from the defendant, Deputy Brock had lawful authority to detain and transport White to the vehicle. Illegality, if any, arose when he placed White in handcuffs to

---

[3]     Before trial, White moved to suppress "all statements made by the defendant" during and after the unlawful arrest. On appeal, White states:

> [t]he main incriminating statement was Ms. White's request for Deputy Brock not to open the purse in front of her son, which arguably showed her knowledge of its contents. However, Ms. White argues, as she argues below, that all statements, even if not incriminating on its face, are subject to suppression.

White also notes her statement that the marijuana was hers and her recantation thereof. White does not point to any other statements in particular that she seeks to suppress before the deputies located drugs in the vehicle. Regardless, as discuss herein, we conclude that the attenuation doctrine applies to preclude suppression of any of White's statements.

effectuate the transport. Based on the circumstances of this case, we conclude that Deputy Brock's conduct was not flagrant.

Third, Deputy Brock read White *Miranda* warnings before she made the challenged statements. Although *Miranda* warnings are not the only factor to be considered, "The Miranda warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest." *Brown*, 422 U.S. at 603. Because White was given *Miranda* warnings, intervening circumstances existed, and Deputy Brock's conduct was not flagrant, we conclude that White's statements were come at by means sufficiently distinguishable to be purged of the primary taint. Consequently, the attenuation doctrine precludes suppression of White's statements.

**B.  Idaho Criminal Rule 36 Motion**

On appeal, both parties agree that the district court erred by denying White's I.C.R. 36 motion to correct the clerical error in her judgment of conviction. In addition, we agree that the district court erred because the written sentence in White's judgment of conviction did not accurately reflect the district court's oral pronouncement. As such, we reverse the district court's order denying White's I.C.R. 36 motion. We remand the case to the district court to re-enter White's judgment of conviction to reflect that White was sentenced to a unified term of three years with one year determinate.

### III.

### CONCLUSION

The district court did not err in denying White's motion to suppress. However, the district court did err in denying White's I.C.R. 36 motion. Consequently, we affirm the district court's order denying White's motion to suppress but reverse its order denying White's I.C.R. 36 motion. In addition, we affirm White's judgment of conviction but we remand the case to the district court with instructions to re-enter White's judgment of conviction to reflect the correct sentence as a unified term of three years with one year determinate.

Chief Judge HUSKEY and Judge BRAILSFORD **CONCUR**.