194 P.3d 550

STATE of Idaho, Plaintiff–Respondent,

v.

Charles V. CHAPMAN, Defendant–Appellant.

No. 33859.

Court of Appeals of Idaho.

Aug. 27, 2008.

Curtis R. Smith, Idaho Falls, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

LANSING, Judge.

Charles V. Chapman appeals from his conviction for possession of cocaine, asserting that the district court erred in denying his motion to suppress evidence found after a traffic stop. We affirm.

## I.

## BACKGROUND

After he was arrested and charged with possession of cocaine, Chapman filed a motion to suppress evidence. From the evi-

dence submitted at a hearing on the motion, the following uncontroverted facts were established.

On an interstate highway, an Idaho State Police trooper observed two vehicles, a car and an SUV, that appeared to be exceeding the speed limit. The trooper activated his radar and clocked the car at ten miles per hour over the speed limit and the SUV, which was in the process of passing the car, at fifteen miles per hour over the speed limit. The officer began pursuit, intending to effectuate a stop of the SUV only. By the time the trooper caught up to the vehicles, however, the driver of the SUV had slowed and pulled back in behind the car, apparently because the driver had seen the trooper. The trooper activated the overhead lights on his vehicle, and the SUV pulled over. So did the car, a few hundred feet ahead. The trooper motioned the driver of the SUV to pull ahead to where the car was stopped. The trooper stopped his vehicle directly behind the car, and the SUV pulled over in front of the car. The overhead lights on the trooper's vehicle remained on through the encounter.

The occupants of the SUV and the car, three in total, were traveling together from California to Montana. The driver of the car was eventually identified as Jennifer Lee Hanson, her passenger was Chapman, and the driver of the SUV was Chapman's grandson. When the patrol car pulled up, Chapman exited the vehicle. The trooper spoke first to Chapman, who said that he had rented the car in Montana to return to his home in California and that he and his companions were traveling back to Montana to return the rental. The trooper thought this explanation odd, as the rental car was owned by a national rental company that accepts returns at any location. The trooper then asked Hanson for her driver's license. Hanson stated that she did not have one and falsely identified herself as Jennifer Best. Hanson stated that she could not remember her social security number, and she was unable to provide any documentation of her identity. The trooper noted that Hanson's eyes were glassy and bloodshot. Chapman also told the trooper that

Hanson's name was Jennifer Best. The trooper then returned to his vehicle to check on this name, but was unable to locate any Jennifer Best residing at the locations provided by Hanson as her places of residence. The trooper then arrested Hanson for driving without a license, handcuffed her, and placed her in the back of his vehicle.

The trooper thereafter returned to the car and told Chapman that the trooper would search the car incident to Hanson's arrest. Because the trooper was the only law enforcement officer at the scene, for his protection before searching the car he asked Chapman whether he had any weapons on his person or in his pockets. Chapman responded by emptying his pockets onto the ground. He dropped the items straight down to the ground in front of him, without bending over. The trooper noticed that Chapman was also nervous and "walking funny." Earlier, as Chapman was providing his driver's license to the officer, he was shaking and had difficulty removing the license from his wallet. At the time, the trooper assumed that Chapman's odd behavior was due to his age.[1] When asked, Chapman consented to a patdown frisk of his person for weapons. The frisk revealed no weapons or items readily identifiable by touch as contraband.

The trooper then searched the car, primarily looking for documentation that would reveal the woman's identity. He found some syringes and letters referencing drug activity, including one addressed to "Charles" containing the statement, "I am here in jail while you are out there slamming dope." The trooper also found a red envelope addressed to Jennifer Lee Hanson. No drugs or weapons were found in this search.

The trooper confronted Chapman with the name on the envelope, and he admitted that it was Hanson's true name. The trooper then returned to his vehicle to further question Hanson. She confirmed that her name was Jennifer Lee Hanson and said that there was an outstanding warrant for her arrest. Hanson did not stop there, however. She also said that she had recently served time in prison for possessing drugs that actually be-

---

1. Chapman was sixty-five years old at the time of the stop.

longed to Chapman, that she was not going to do that again, and that Chapman had cocaine hidden in the groin area of his pants.

The trooper thereupon returned to Chapman with the purpose of removing the drugs believed to be concealed in his pants. Patting down the outside of Chapman's clothing, the trooper felt a hard object in the groin area that was "inconsistent with male genitalia." The trooper then loosened Chapman's pants and removed a plastic baggie containing a rock of cocaine about a quarter-inch in diameter and weighing four and one-half grams. The trooper then formally arrested Chapman.

Chapman moved to suppress the cocaine and certain incriminatory statements he made after his arrest, asserting various instances of alleged unconstitutional conduct. The district court denied the motion, primarily on the ground that, in certain circumstances, a search of a person incident to arrest can precede the announcement of a formal arrest and that the facts known to the officer before the cocaine was seized gave probable cause to arrest Chapman for possession of cocaine. Chapman then conditionally pleaded guilty to the possession charge, reserving the right to appeal the denial of his suppression motion. This appeal followed.

## II.

### ANALYSIS

▆▆▆ Chapman contends that the state trooper's discovery of cocaine on Chapman was the product of violations of the Fourth Amendment's prohibition of unreasonable searches and seizures. This prohibition disallows detentions of people or searches of their persons or property without a warrant unless the detention or search was well within an established exception to the warrant requirement. *California v. Acevedo,* 500 U.S. 565, 580, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619, 634 (1991); *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564, 576–76 (1971); *Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868,

1879, 20 L.Ed.2d 889, 905 (1968); *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967); *State v. Bunting,* 142 Idaho 908, 912, 136 P.3d 379, 383 (Ct.App.2006); *State v. Pearson-Anderson,* 136 Idaho 847, 849–50, 41 P.3d 275, 277–78 (Ct.App.2001). Several such exceptions come into play here. First, officers may conduct investigative detentions, including traffic stops, based upon reasonable suspicion that an individual has been or is about to be engaged in criminal activity, including suspicion that a vehicle is being operated contrary to traffic laws. *Delaware v. Prouse,* 440 U.S. 648, 661, 663, 99 S.Ct. 1391, 1400, 1401, 59 L.Ed.2d 660, 672, 673 (1979); *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621, 628 (1981); *State v. Irwin,* 143 Idaho 102, 104, 137 P.3d 1024, 1026 (Ct.App.2006); *State v. Patterson,* 140 Idaho 612, 614, 97 P.3d 479, 481 (Ct.App. 2004). Second, warrantless arrests made upon probable cause do not violate the Fourth Amendment. *Virginia v. Moore,* —— U.S. ——, 128 S.Ct. 1598, 1607, 170 L.Ed.2d 559, 570–71 (2008). Third, upon making an arrest, the officer may search the person, and in some circumstances the person's vehicle, incident to that arrest. *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768, 774 (1981); *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685, 693–94 (1969); *State v. Watts,* 142 Idaho 230, 232–33, 127 P.3d 133, 135–36 (2005); *State v. Foster,* 127 Idaho 723, 728–30, 905 P.2d 1032, 1037–39 (Ct.App.1995). Finally, warrantless searches are permitted based upon the individual's voluntary consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219–22, 93 S.Ct. 2041, 2043–45, 36 L.Ed.2d 854, 858–59 (1973); *State v. Jaborra,* 143 Idaho 94, 97, 137 P.3d 481, 484 (Ct.App.2006).

### A. Initial Issues

Chapman's appellate brief presents a number of arguments concerning the legality of the traffic stop or the search that merit little discussion.[2] First, Chapman asserts that because the trooper did not initially intend to

---

**2.** After Chapman's appellant's brief was filed, he substituted new counsel. Therefore, the attorney who is shown as the current counsel of record on

appeal is not the attorney who prepared the brief.

effectuate a stop of the car in which Chapman was a passenger, the ensuing detention of Hanson for speeding, and thus Chapman's own detention as a passenger of the vehicle, was unlawful. Chapman cites no authority at all to support this argument, much less authority for the proposition that an officer cannot stop a driver for investigatory purposes on reasonable suspicion of having committed a traffic infraction in his presence where it was not the officer's initial intent to do so. This issue therefore will not be addressed. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996) (issues not adequately supported with argument and authority will not be considered on appeal).

Chapman also appears to argue that because Hanson was not ultimately charged with driving without a license, her arrest for that offense was necessarily unlawful. Again, Chapman cites no authority for this proposition that an arrest that was legal and justified when made later becomes unlawful if a prosecutor does not pursue the charge that the arresting officer had in mind. Therefore, this issue will not be addressed. *Id.*

■ Chapman also contends that the officer's initial pat-down frisk of his person for weapons was unlawful. Chapman does not take issue, however, with the district court's finding that this search was conducted with Chapman's consent. Moreover, no evidence against Chapman was discovered as a result of this frisk, and Chapman makes no claim that this frisk was somehow linked to the ultimate discovery of cocaine on his person. Therefore this argument shows no error in the district court's denial of Chapman's suppression motion.

■ Chapman next asserts that after Hanson was arrested for failure to have a driver's license, Chapman's continued detention was unlawful because the purpose of the investigatory stop had ended and he should have been allowed to take the rental car and leave the scene. He further reasons that because the drugs were discovered during this period of alleged illegal detention, this evidence and his subsequent statements should have been suppressed. We disagree, for the officer was entitled to search the rental car incident to

Hanson's arrest. A search incident to a lawful arrest is among the well-recognized exceptions to the Fourth Amendment's warrant requirement. *Chimel*, 395 U.S. at 762–63, 89 S.Ct. at 2039–40, 23 L.Ed.2d at 693–94; *State v. McIntee*, 124 Idaho 803, 804, 864 P.2d 641, 642 (Ct.App.1993). The United States Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Belton*, 453 U.S. at 460, 101 S.Ct. at 2864, 69 L.Ed.2d at 775. *See also Watts*, 142 Idaho at 232, 127 P.3d at 135; *Foster*, 127 Idaho at 728, 905 P.2d at 1037. Accordingly, after Hanson's arrest, a search of the vehicle was permissible.

■■ Chapman's assertion that the stop was unconstitutionally prolonged after the vehicle search is also meritless. Although an investigative detention must ordinarily last no longer than is necessary to effectuate the purpose of the stop, a detention initiated for one investigative purpose may disclose suspicious circumstances that justify expanding the investigation to other possible crimes. *State v. Brumfield*, 136 Idaho 913, 916, 42 P.3d 706, 709 (Ct.App.2001). Here, Hanson was initially stopped for speeding. Thereafter, she failed to produce a driver's license or other sufficient proof of her identity, and she gave the trooper a false name. She was arrested and the trooper searched the car, discovering evidence of her true identity and of drug activity. When confronted with this evidence, Hanson confessed her identity and told the trooper that Chapman had cocaine on his person, justifying Chapman's further detention. Chapman has identified no delay in the trooper's investigation of any of these matters.

■ Finally, Chapman asserts that statements he made to the trooper in response to interrogation following his arrest must be suppressed because he was not informed of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The evidence cited by Chapman in support of this proposition shows that he was given *Miranda* warnings, and there is noth-

ing in the record to the contrary. Chapman therefore has shown no error.

## B. Search Incident to Chapman's Arrest

We thus arrive at the question whether the trooper's search inside Chapman's clothing, where cocaine was found, was lawful. The district court held that this search was permissible as a search incident to Chapman's arrest because the officer by then possessed probable cause to arrest Chapman for possession of cocaine and because a search incident to arrest can precede the announcement of a formal arrest.

■ We find no error in the district court's analysis. The United States Supreme Court has said: "Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa." *Rawlings v. Kentucky,* 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633, 645–46 (1980). So long as the search and arrest are substantially contemporaneous, and the fruits of the search are not required to establish probable cause for the arrest, the search need not precisely follow the arrest in order to be incident to that arrest. *State v. Johnson,* 137 Idaho 656, 662, 51 P.3d 1112, 1118 (Ct.App.2002).

■ Here, Chapman contends there was no probable cause for his arrest before the search yielded cocaine. Probable cause for an arrest is not measured by the same level of proof required for conviction. *State v. Jenkins,* 143 Idaho 918, 922, 155 P.3d 1157, 1161 (2007). Rather, it is "the possession of information that would lead a person of ordinary care and prudence to believe or entertain an honest and strong presumption that such person is guilty." *State v. Julian,* 129 Idaho 133, 136, 922 P.2d 1059, 1062 (1996); *State v. Gibson,* 141 Idaho 277, 282, 108 P.3d 424, 429 (Ct.App.2005). Whether there is probable cause to arrest an individual depends on the totality of the circumstances and the assessment of probabilities in particular factual contexts. *Maryland v. Pringle,* 540 U.S. 366, 370–71, 124 S.Ct. 795, 799–800, 157 L.Ed.2d 769, 774–75 (2003). The facts making up a probable cause determination

are viewed from an objective standpoint. *Julian,* 129 Idaho at 137, 922 P.2d at 1063. The expertise and experience of the officer must be taken into account, *State v. Ramirez,* 121 Idaho 319, 323, 824 P.2d 894, 898 (Ct.App.1991), but because the facts making up a probable cause determination are viewed from an objective standpoint, the officer's subjective belief concerning the existence of probable cause, even if the officer thought that probable cause to arrest was lacking, is not determinative. *Julian,* 129 Idaho at 137, 922 P.2d at 1063; *State v. Middleton,* 114 Idaho 377, 381, 757 P.2d 240, 244 (Ct.App.1988).

■ Chapman seems to argue that Hanson's allegation that Chapman had cocaine hidden in his pants was not reliable enough to give probable cause for his arrest because she had already lied to the officer concerning her identity. He also asserts that the letter found in the car accusing Chapman of "slamming dope" was not "authenticated." We interpret this as an argument that the veracity of Hanson and the unknown author of the letter were not adequately supported before the officer undertook the search of Chapman's clothing.

■ When the State contends that probable cause is based, at least in part, upon the assertions of an informant, the veracity and basis of knowledge of the informant are factors for the court's consideration. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983). Where the information has come from a citizen informant, disclosure of the person's name and address will ordinarily be sufficient to show the informant's veracity and reliability, *State v. Zapata–Reyes,* 144 Idaho 703, 708, 169 P.3d 291, 296 (Ct.App.2007); *Dunlap v. State,* 126 Idaho 901, 907, 894 P.2d 134, 140 (Ct.App.1995), but where the informant is part of the "criminal milieu" more information may be necessary. *Id.* Here, by the time that Hanson disclosed to the officer that Chapman was carrying cocaine, she was aware that the officer knew her true identity, and she was already under arrest for driving without a license. Therefore, Hanson was aware that she could suffer adverse conse-

quences if she gave false information to the officer. Indeed, she may have been motivated to provide helpful information to the state trooper in the hope of gaining a more favorable disposition of her driving offense. Thus, her circumstance tended to indicate that the information she gave would be reliable. *See State v. Peterson,* 133 Idaho 44, 48, 981 P.2d 1154, 1158 (Ct.App.1999). The officer could also reasonably infer that Hanson's assertion that Chapman had hidden cocaine in his pants was based upon her personal observation. The probable cause analysis here does not turn entirely upon Hanson's reliability as an informant, however, for the officer had made independent observations that tended to corroborate the information from Hansen. The officer knew that Hanson's eyes were glassy and bloodshot, indicating that she had been using drugs; that Chapman's explanation of the purpose of his trip from California to Montana was odd; that both Hanson and Chapman had lied about Hanson's identity; that letters found in the car referenced drug activity, with one of them addressed to "Charles" saying he was "slamming dope"; and that syringes were found in the car. Chapman appeared to be nervous, was shaking, and had difficulty getting his license out of his wallet. The trooper had observed that Chapman was "walking funny" and had emptied his pockets onto the ground in a strange manner. Although the trooper initially assumed that Chapman's odd movement was due to his age, when Hanson indicated that Chapman had drugs hidden in his groin area, the reason for Chapman's physical behavior, viewed objectively, became suspicious as possibly a means to prevent the drugs from falling out of his pants in front of the trooper.

When viewed singly, any one factor in a probable cause determination "may not be dispositive, yet when viewed in unison the puzzle may fit." *United States v. Davis,* 458 F.2d 819, 821 (D.C.Cir.1972). Such is the case here. Viewed in their totality, the facts known to the trooper gave rise to probable cause to arrest Chapman for possession of cocaine before the search that revealed the cocaine. That search, therefore, was a lawful search incident to Chapman's arrest.

## III.

## CONCLUSION

The record here demonstrates no violation of Chapman's Fourth Amendment rights. Therefore, the district court's order denying Chapman's motion to suppress evidence is affirmed.

Chief Judge GUTIERREZ and Judge PERRY concur.