## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 36509

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2010 Unpublished Opinion No. 636 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: September 9, 2010 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| SCOTT NICHOLSON, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Blaine County. Hon. R. Barry Wood, District Judge.

Judgment of conviction for possession of a controlled substance, with an enhancement for being a persistent violator, affirmed.

Molly J. Huskey, State Appellate Public Defender; Heather M. Carlson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jennifer E. Birken, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge

Scott Nicholson appeals from his judgment of conviction for possession of a controlled substance. Specifically, Nicholson challenges the district court's order denying his motion to suppress. For the reasons set forth below, we affirm.

### I.

### FACTS AND PROCEDURE

Officers stopped Nicholson's vehicle for failure to display a front license plate. I.C. § 49-428(1). After initiating the stop, the officers requested that Nicholson exit the vehicle. The officers informed Nicholson why he had been stopped and asked for his identification, which he was unable to produce. The officers requested verbal identification and then directed Nicholson to stand at the top of a driveway approximately twenty to thirty feet away from his car. While one officer was requesting information regarding Nicholson's identification and car registration from dispatch, another officer moved up the driveway and began questioning Nicholson. At no

1

point during this questioning was Nicholson read his *Miranda*[1] rights. Approximately two minutes into the questioning, the officer asked Nicholson whether there were any guns, drugs, or knives in the vehicle. Nicholson told the officer that there was a marijuana pipe in the vehicle. Based on Nicholson's statement, the officers conducted a search of the vehicle and found, among other things, a green leafy substance they suspected to be marijuana. Immediately thereafter, Nicholson was arrested. Approximately five minutes elapsed between when the officers initiated the traffic stop and when the search of the vehicle was conducted. The entire stop, ending with Nicholson's arrest, took eighteen minutes. Upon a search of Nicholson at the jail, methamphetamine was also discovered. Nicholson was charged with possession of methamphetamine, a felony under I.C. § 37-2732(c)(1), with an enhancement for being a persistent violator under I.C. § 19-2514.

Nicholson filed a motion to suppress, arguing that his Fourth Amendment right against unreasonable search and seizure was violated because the officers impermissibly expanded the scope of the investigative stop. Nicholson also argued that his *Miranda* rights were violated because, when he was moved away from his vehicle onto the driveway, he was in custody for purposes of *Miranda* but the officers did not read him his *Miranda* rights prior to questioning him. The district court denied Nicholson's motion to suppress. Nicholson entered a guilty plea reserving his right to appeal the denial of his motion to suppress. The district court sentenced Nicholson to a unified term of eighteen years, with a minimum period of confinement of five years. Nicholson appeals.

## II.

## ANALYSIS

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*,

---

[1]     *See Miranda v. Arizona*, 384 U.S. 436 (1966).

2

127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## A. Scope of the Investigative Stop

Nicholson argues that his Fourth Amendment right against unreasonable search and seizure was violated because the scope of the traffic stop was improperly expanded beyond the initial purpose of the stop. The determination of whether an investigative detention is reasonable requires a dual inquiry--whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *State v. Roe,* 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). An investigative detention is permissible if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon,* 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). Here, Nicholson does not contest the basis for the stop. Thus, we address only whether the officers impermissibly expanded the scope of the stop by moving Nicholson away from his vehicle and by questioning him on matters not directly related to the purpose of the stop.

An investigative detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *Roe,* 140 Idaho at 181, 90 P.3d at 931; *State v. Gutierrez,* 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002). Where a person is detained, the scope of detention must be carefully tailored to its underlying justification. *Roe,* 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. In this regard, we must focus on the intensity of the detention, as well as its duration. *Roe,* 140 Idaho at 181, 90 P.3d at 931. The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *Roe,* 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. Brief inquiries not otherwise related to the initial purpose of the stop do not necessarily violate a detainee's Fourth Amendment rights. *Roe,* 140 Idaho at 181, 90 P.3d at 931.

Although an investigative detention must ordinarily last no longer than is necessary to effectuate the purpose of the stop, a detention initiated for one investigative purpose may disclose suspicious circumstances that justify expanding the investigation to other possible crimes. *State v. Chapman*, 146 Idaho 346, 350, 194 P.3d 550, 554 (Ct. App. 2008). An officer's

observations, general inquiries, and events succeeding the stop may, and often do, give rise to legitimate reasons for particularized lines of inquiry and further investigation by an officer. *State v. Meyers*, 118 Idaho 608, 613, 798 P.2d 453, 458 (Ct. App. 1990). Here, the district court properly focused on the events and time between the initial traffic stop and when Nicholson admitted to having a marijuana pipe in the vehicle. The district court correctly reasoned that Nicholson's statement about the marijuana pipe created a lawful basis for expanding the scope of the traffic stop to include a search of the vehicle. Therefore, the question presented by Nicholson's motion to suppress was whether the scope of the stop was impermissibly expanded in the approximately five minutes that elapsed between the initial stop and when Nicholson stated there was a marijuana pipe in the car.

The district court first considered whether removing Nicholson from his vehicle and asking him to step twenty to thirty feet up a driveway was beyond the scope of an ordinary investigative stop. It concluded that it was not. In *Parkinson*, this Court held that requesting the driver to sit in a patrol car was reasonable and did not impermissibly expand the scope of the investigative stop. *Parkinson,* 135 Idaho at 363, 17 P.3d at 307. Under *Parkinson*, moving a driver away from a vehicle, by itself, does not create an impermissible expansion of the traffic stop. *Id.* Therefore, the district court did not err in finding that moving Nicholson twenty to thirty feet away from the car was not an impermissible expansion of the scope of the stop.

The district court also found that the questions put to Nicholson during the time between the initial traffic stop and his statement that there was a marijuana pipe in the car did not impermissibly expand the scope of the traffic stop. In *Parkinson*, a driver was stopped for a cracked windshield and exceeding the speed limit. Officers asked the driver a series of questions about whether there was any alcohol, drugs, or weapons in the vehicle. *Id.* This Court held that such brief, general inquiries, which were not otherwise related to the initial purpose of the traffic stop, did not impermissibly expand the scope of the stop. *Id.* Here, the district court found the officer's questions were general in nature. The officer asked Nicholson to account for his movements during the evening, about his past criminal history, and whether there were any drugs, alcohol, or knives in the vehicle. These questions were of the same general nature as the inquiries made in *Parkinson*. In addition, the district court found that the duration of the questioning lasted for less than three minutes. During the three minutes that Nicholson was being questioned, another officer was verifying Nicholson's identity and vehicle registration with

4

dispatch. Given the short duration and nature of the questioning, the district court did not err in finding that such generalized questions did not impermissibly expand the scope of the traffic stop.

**B.    *Miranda* Warnings**

Nicholson also argues that, when he was moved away from his vehicle onto the driveway, he was in custody for purposes of *Miranda* and that, consequently, the officers should have administered *Miranda* warnings before initiating their questioning. *Miranda* warnings are triggered by custodial interrogation. *State v. Medrano*, 123 Idaho 114, 117, 844 P.2d 1364, 1367 (Ct. App. 1992). The United States Supreme Court equated custody with a person being deprived of his or her freedom by the authorities in any significant way. *Miranda*, 384 U.S. at 478. This test has evolved to define custody as a situation where a person's freedom of action is curtailed to a degree associated with formal arrest. *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984); *State v. Myers*, 118 Idaho 608, 610, 798 P.2d 453, 455 (Ct. App. 1990). The "initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California*, 511 U.S. 318, 323 (1994). To determine if a suspect is in custody, the only relevant inquiry is how a reasonable person in the suspect's position would have understood his or her situation. *Berkemer*, 468 U.S. at 442; *Myers*, 118 Idaho at 611, 798 P.2d at 456.

In order to make this determination, we must review the totality of the circumstances presented in the record. *State v. Tapp*, 136 Idaho 354, 363, 33 P.3d 828, 837 (Ct. App. 2001). In evaluating the totality of the circumstances, the Supreme Court has determined that the following factors are relevant: the location, timing, and length of the interview; the nature and tone of the questioning; whether the defendant came to the place of questioning voluntarily; the use of physical contact or physical restraint; and the demeanor of all of the key players, both during the interview and in any proceedings held in court. *Thompson v. Keohane,* 516 U.S. 99, 118 (1995).

The district court held that Nicholson was not in custody because a reasonable person in Nicholson's position would not have understood that he or she was under formal arrest. The district court found that the calm manner and tone of the officer's questions and Nicholson's answers and the length of the questioning (approximately three minutes) would not have lead Nicholson to believe he was under arrest. The district court particularly noted that Nicholson was not the titled owner of the vehicle and had not produced a valid identification. The district

court found that a reasonable person in Nicholson's circumstances would have believed the short delay was because the police were contacting dispatch for information about his identity and not because he was under arrest. The district court analyzed all the factors relevant to determining whether Nicholson was in custody for purposes of *Miranda*, including considering the duration of the questioning, the tone and demeanor of the officers and Nicholson, and whether a reasonable person would have believed he or she was under arrest. Therefore, the district court did not err when it determined that Nicholson was not in custody for the purposes of *Miranda*.

## III.
## CONCLUSION

Moving Nicholson twenty to thirty feet away from his vehicle and posing general, basic questions to him did not impermissibly expand the scope of the traffic stop and, therefore, did not violate Nicholson's right against unreasonable search and seizure under the Fourth Amendment. In addition, when Nicholson was questioned by the officers on the driveway, he was not in custody for *Miranda* purposes and, consequently, his *Miranda* rights were not violated. Therefore, the district court did not err by denying Nicholson's motion to suppress. Accordingly, Nicholson's judgment of conviction for possession of a controlled substance, with an enhancement for being a persistent violator, is affirmed.

Judge GUTIERREZ and Judge GRATTON, **CONCUR.**