**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38362**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2012 Unpublished Opinion No. 732** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: November 27, 2012** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **MISTY MARIE BUHLER,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **Defendant-Appellant.** | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Randy J. Stoker, District Judge.

Order denying motion to suppress evidence, <u>affirmed</u>.

Stephen D. Thompson, Ketchum, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Nicole L. Schafer, Deputy Attorney General, Boise, for respondent. Nicole L. Schafer argued.

_____

PERRY, Judge Pro Tem

Misty Marie Buhler appeals from the judgment entered upon her conditional guilty plea to possession of a controlled substance following the denial of her motion to suppress evidence. While investigating a possible store burglary, officers detained Buhler, asked for consent to search her car, and located methamphetamine during the search. Buhler filed a motion to suppress the evidence of methamphetamine, which the district court denied. Buhler appeals and asserts that the district court erroneously equated the absence of an express objection to the officer's request to search her car with consent to a search, and that any consent was invalid because it was the result of illegal police conduct. We affirm.

**I.**

**BACKGROUND**

On May 29, 2010, at approximately 10:17 p.m., Officer Hayes was dispatched to check an alarm that had been triggered at a department store. After checking the store's front doors and

loading dock and finding no forced entry, Officer Hayes began filling out a false-alarm report in his patrol vehicle. While doing so, Officer Hayes received a report that employees of a nearby store had seen people sitting in three cars parked near the side of the building for approximately forty-five minutes. Officer Hayes was aware of several recent burglaries in which department stores had been breached through the roof so he decided to investigate whether a similar burglary may have just occurred. Officer Hayes quickly located the three vehicles parked side-by-side in a poorly lit and otherwise vacant portion of the parking lot alongside the building.

When Officer Hayes approached the cars, Misty Buhler and Mike Wilson were sitting in Wilson's car, and Buhler's young child was asleep in Buhler's car parked to the side. Officer Hayes parked his patrol vehicle at an angle behind Wilson's and Buhler's cars, effectively blocking them in.[1] Officer Hayes then approached Wilson's car and spoke with Buhler, who was seated in the backseat. Another officer, Officer Sylvester, arrived shortly thereafter and began speaking with Wilson, who was seated in the driver's seat. Buhler explained to Officer Hayes that she and Wilson had been shopping at a nearby store earlier that evening, and showed the officer her shopping bags and receipts.

Officer Sylvester and Officer Hayes both testified that they began to suspect that Buhler and Wilson were involved in drug activity based on Wilson's nervousness, and because they found it unusual for the only passenger of the car to be seated in the backseat. Furthermore, both officers felt threatened when Wilson refused orders to keep his hands on the steering wheel and began to reach under his seat. Officer Sylvester ordered Wilson out of the vehicle and placed him in handcuffs, and then ordered Buhler out of the vehicle and placed her in handcuffs as well. Both Wilson and Buhler were frisked for weapons and asked to sit on the hood of Officer Hayes's vehicle. At that point, Wilson consented to a search of his vehicle, yielding the discovery of marijuana on the driver's seat floor and somewhere on the floor in the backseat where Buhler had been recently sitting. Officer Sylvester then asked Buhler whether he could search her car. Both officers testified that Buhler responded affirmatively to the request for consent, although neither could remember her precise response. Buhler testified that she told the officers that she was not "comfortable" with a search. Officer Sylvester searched Buhler's car, and discovered methamphetamine in a purse located in the center console. Officer Sylvester

---

[1]    The driver of the third vehicle, who was an acquaintance of Wilson, was eventually questioned and, following a consensual search of her vehicle, was permitted to leave.

2

gave Buhler *Miranda* warnings and continued to question her, at which time Buhler claimed ownership of everything in her car.[2]  Buhler was charged with possession of a controlled substance.

Buhler filed a suppression motion based on allegations that she did not consent to a search, and that even if she did consent, her consent was the fruit of illegal police conduct including an illegal detention, an illegal frisk, and *Miranda* violations.  Following a hearing, the district court ruled that the officers had reasonable suspicion to justify the initial detention, that the detention was not unreasonably expanded when Buhler was removed from the vehicle, and that Buhler had consented to a search of her vehicle.  The district court determined that Buhler's frisk was unjustified, but concluded that the evidence of methamphetamine need not be suppressed because it was not discovered as a result of the frisk. The district court also determined that the officers improperly interrogated Buhler before informing her of her *Miranda* rights.  The district court granted Buhler's motion to suppress various unwarned statements, but denied Buhler's motion to suppress evidence of methamphetamine.

Buhler entered a conditional plea of guilty, and now appeals the district court's denial of her motion to suppress.

## II.

## ANALYSIS

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures.  A warrantless search is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement.  *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct. App. 1999).  A warrantless search may be permissible when conducted pursuant to an individual's consent.  *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta*, 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct. App. 1998).  In such instances, the State has the burden of demonstrating consent by a preponderance of the evidence.  *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct. App. 1997).  Consent to search may be in the form of words, gestures, or conduct.  *State v. Knapp*, 120 Idaho 343, 348, 815 P.2d 1083, 1088 (Ct. App. 1991).

---

[2]  *See Miranda v. Arizona*, 384 U.S. 436 (1966).

**A.      Consent**

Buhler asserts that the district court found only that she did not expressly object to the search of her car, and in doing so, erroneously equated the absence of an objection to the search with consent to the search. We disagree with Buhler's characterization of the district court's findings. In Buhler's suppression motion and supporting affidavit, she asserted that her vehicle was searched "over her objection"; at the evidentiary hearing on her motion, she testified that she told the officers that she was not "comfortable" with a search. In contrast, both officers testified that Officer Sylvester asked Buhler for permission to search her car and that Buhler responded in the affirmative, although neither officer could remember her exact words. The record demonstrates that the district court first rejected Buhler's argument that she objected, finding "that she did not expressly refuse to allow a search of her car." The district court continued to find that "Buhler did consent to a search of her vehicle." Thus, Buhler's attempt to characterize the district court's rejection of her claim--that she affirmatively objected to the search--as the application of an incorrect legal standard is belied by the record; after rejecting Buhler's claim that she expressly objected to the search, the district court made a factual finding that Buhler consented. That finding was supported by substantial evidence including the testimony from both police officers that Buhler responded affirmatively to the officers' request to search. Whether a defendant consented to a search is an issue of fact, therefore, we defer to the trial court's finding that Buhler consented to the search. *See, e.g.*, *State v. Jaborra*, 143 Idaho 94, 97, 137 P.3d 481, 484 (Ct. App. 2006)

**B.      Validity of Consent**

Buhler alternatively asserts that even if she did consent, her consent was invalid because it was tainted by an illegal detention, an illegal frisk, and *Miranda* violations.

**1.      Detention**

A consent to search that is given during an illegal detention generally is tainted by the illegality and is ineffective. *State v. Stewart*, 145 Idaho 641, 644, 181 P.3d 1249, 1252 (Ct. App. 2008); *State v. Gutierrez*, 137 Idaho 647, 652, 51 P.3d 461, 466 (Ct. App. 2002); *State v. Zavala*, 134 Idaho 532, 535, 5 P.3d 993, 996 (Ct. App. 2000). The reasonableness of a given search or seizure is a question of law over which we exercise independent review. *State v. Linenberger*, 151 Idaho 680, 683, 263 P.3d 145, 148 (Ct. App. 2011); *State v. Morris*, 131 Idaho 562, 565, 961 P.2d 653, 656 (Ct. App. 1998).

4

Buhler appears to assert that her detention was illegal from the outset because the police lacked reasonable suspicion to detain her. An investigative detention is a seizure of limited duration to investigate suspected criminal activity and does not offend the Fourth Amendment if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *Stewart*, 145 Idaho at 644, 181 P.3d at 1252; *Knapp*, 120 Idaho at 347, 815 P.2d at 1087. Here, Officer Hayes was responding to a security alarm that had been triggered after hours at a department store when employees of a nearby store reported that they had observed people sitting in three parked vehicles near the department store for approximately forty-five minutes. Officer Hayes found Buhler and several other individuals sitting in three vehicles in a poorly lit and otherwise vacant portion of the parking lot alongside the same building where the alarm had recently been triggered. Under these circumstances, we agree with the district court's finding that the initial detention, which occurred when Officer Hayes parked behind Buhler's and Wilson's cars so as to prevent them from leaving, was reasonable.

Buhler also appears to assert that the detention was illegally expanded when the officers removed her from Wilson's vehicle, placed her in handcuffs, ordered her to sit on the hood of the police car, and began investigating for drug activity. "Where a person is detained, the scope of detention 'must be carefully tailored to its underlying justification.'" *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). In determining if the detention becomes unreasonable, the court is to consider the duration and intensity of the detention and the law enforcement purposes served. *State v. DuValt*, 131 Idaho 550, 554, 961 P.2d 641, 645 (1998); *Parkinson*, 135 Idaho at 361, 17 P.3d at 305.

Police are generally permitted, as a matter of course, to ask the occupants of a vehicle to exit a vehicle during a lawful traffic stop or other detention. *Maryland v. Wilson*, 519 U.S. 408, 410 (1997); *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977); *State v. Irwin*, 143 Idaho 102, 104, 137 P.3d 1024, 1026 (Ct. App. 2006). *See also Parkinson*, 135 Idaho at 363, 17 P.3d at 307 ("Typically, a reasonable investigation of a traffic stop may include asking for the driver's license and registration, requesting the driver to sit in the patrol car, and asking the driver about his destination and purpose."). Any intrusion caused by ordering the occupants of a vehicle to wait in a particular location outside the vehicle during an investigatory detention "can only be

described as *de minimis*." *Mimms*, 434 U.S. at 111. "What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety." *Id.* Thus, the detention was not made unreasonable when Buhler was asked to step out of the vehicle and to sit on the hood of the officer patrol vehicle.

If the use of the handcuffs is a reasonable precaution to ensure the officers' safety, the use of the handcuffs is also warranted during a limited stop. *DuValt*, 131 Idaho at 554, 961 P.2d at 645. *See also Muehler v. Mena*, 544 U.S. 93, 100-01 (2005); *Stewart*, 145 Idaho at 646, 181 P.3d at 1254; *State v. Butcher*, 137 Idaho 125, 131, 44 P.3d 1180, 1186 (Ct. App. 2002). In *DuValt*, the Idaho Supreme Court found that it was reasonable for officers to handcuff the occupants of a vehicle following a stop when there were five officers and three occupants present because the occupants were uncooperative, the officers had observed erratic driving, the officers were unaware how many people were in the vehicle, and the officers suspected that the occupants of the vehicle were involved in drug activity. *DuValt*, 131 Idaho at 554, 961 P.2d at 645. In *Butcher*, this Court held that the officer was justified in placing two occupants of a vehicle in handcuffs during an investigatory stop because the vehicle matched the description of a vehicle used in an armed robbery and because the officer was alone, at night, and outnumbered by two possible robbery suspects. *Butcher*, 137 Idaho at 131, 44 P.3d at 1186. In *Muehler*, the United States Supreme Court held that it was reasonable for officers to place an individual in handcuffs for two to three hours while the officers executed a search warrant for weapons and a wanted gang member. *Muehler*, 544 U.S. at 100. Here, two officers were outnumbered by three adult suspects--including Buhler, Wilson, and Wilson's acquaintance--at night in a poorly lit and otherwise vacant parking lot, alongside a building where a store's security alarm had just been triggered. During the initial encounter, Wilson refused the officers' orders to keep his hands on the steering wheel, and attempted to reach under his seat, and Buhler protested when the officers removed Wilson from the vehicle. Under these circumstances it was reasonable for the officers to place Buhler and Wilson in handcuffs during their investigation for purposes of officer safety.

It is well established in Idaho that although an investigative detention must ordinarily last no longer than is necessary to effectuate the purpose of the stop, a detention initiated for one investigative purpose may disclose suspicious circumstances that justify expanding the investigation to other possible crimes. *State v. Chapman*, 146 Idaho 346, 350, 194 P.3d 550, 554 (Ct. App. 2008); *State v. Brumfield*, 136 Idaho 913, 916, 42 P.3d 706, 709 (Ct. App. 2001). *See*

6

*also State v. Grantham*, 146 Idaho 490, 496, 198 P.3d 128, 134 (Ct. App. 2008). In this case, approximately ten to twelve minutes passed between the time that Officer Hayes initially approached Wilson's vehicle, and the time that Officer Sylvester asked Buhler for consent. During that time, the officers searched Wilson's car and discovered marijuana on the floor near Wilson's seat and on the floor near Buhler's seat. Under these circumstances, we conclude that the detention was not made unreasonable because of the passage of time, or because the officers' investigation shifted from a burglary investigation to an investigation of drug activity. In sum, Buhler's detention was not illegal, and thus could not have tainted her consent.

### 2.    Illegal frisk and *Miranda* violations

The district court determined that Buhler's pat down was illegal, and that a *Miranda* violation occurred when the police handcuffed Buhler and questioned her prior to giving her *Miranda* warnings. The State has not challenged these rulings on appeal. Buhler asserts that these illegalities, which occurred before she consented to a search, tainted her consent. However, not all evidence discovered following illegal police conduct is tainted by the illegality, requiring the suppression of the evidence.

The attenuation doctrine permits the use of evidence that would normally be suppressed as fruit of police misconduct if the causal chain between the misconduct and the discovery of the evidence has been sufficiently attenuated. *State v. Hoak*, 107 Idaho 742, 749, 692 P.2d 1174, 1181 (1984); *State v. Hudson*, 147 Idaho 335, 338, 209 P.3d 196, 199 (Ct. App. 2009). In applying the attenuation doctrine, the ultimate question is whether the police acquired the evidence by exploiting the illegality or by means sufficiently distinguishable to be purged of the primary taint. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963); *State v. Bigham*, 141 Idaho 732, 734, 117 P.3d 146, 148 (Ct. App. 2005). Idaho appellate courts have balanced three factors to determine attenuation: (1) the elapsed time between the misconduct and the acquisition of the evidence; (2) the occurrence of intervening circumstances; and (3) the flagrancy and purpose of the improper law enforcement action. *State v. Page*, 140 Idaho 841, 846, 103 P.3d 454, 459 (2004); *State v. Schrecengost*, 134 Idaho 547, 549, 6 P.3d 403, 405 (Ct. App. 2000). Where a defendant has moved to suppress evidence allegedly gained through unconstitutional police conduct before he consents to a search, the State must prove that the consent was not procured by exploitation of the previous illegality. *Wong Sun*, 371 U.S. at 488; *State v. Tietsort*, 145 Idaho 112, 117, 175 P.3d 801, 806 (Ct. App. 2007). However, the defendant bears an initial burden of

7

going forward with evidence to show a factual nexus between the illegality and the State's acquisition of the evidence. *State v. Keene*, 144 Idaho 915, 918, 174 P.3d 885, 888 (Ct. App. 2007); *State v. McBaine*, 144 Idaho 130, 133, 157 P.3d 1101, 1104 (Ct. App. 2007).

Buhler has failed to identify a factual nexus between the illegality of the frisk or the *Miranda* violations and the discovery of methamphetamine in her car.[3] The police did not exploit the frisk in some manner that led them to discover the methamphetamine in Buhler's car and Buhler did not inform the police that she had methamphetamine in her car during the unlawful interrogation. The officers sought to search Buhler's car not as a result of unwarned statements or the fruits of illegal frisk, but because their investigation had shifted from a burglary investigation to a drug investigation, and because they discovered marijuana on the floor of the backseat of Wilson's car, where Buhler had recently been sitting. Absent a factual nexus between the illegality of the frisk or the *Miranda* violations and the discovery of the methamphetamine in Buhler's car, it is not necessary to address the attenuation factors. However, even if there was a factual nexus, a consideration of the attenuation factors leads to the same result. The time that elapsed between the frisk and interrogation on the one hand and Buhler's consent on the other weighs against attenuation because it was brief, but the other factors weigh in favor of attenuation. The police conduct was not egregious, but was described by the district court as "cooperative and cordial"; and the frisk, even if it was ultimately unjustified, was conducted for the purpose of police safety. After balancing all of the factors, we conclude that any taint from the illegal frisk and *Miranda* violations was attenuated, and thus did not invalidate Buhler's consent.[4]

---

[3] We note, and Buhler concedes, that a *Miranda* violation, as distinguished from the coercion of an involuntary statement, does not itself result in the suppression of physical evidence discovered as a result of the unwarned statement. *Woodward v. State*, 142 Idaho 98, 107, 123 P.3d 1254, 1263 (Ct. App. 2005). In other words, "there is no such thing as 'fruit of the poisonous *Miranda* violation.'" *Id. See also United States v. Patane*, 542 U.S. 630, 636-37 (2004); *State v. Garcia*, 143 Idaho 774, 781, 152 P.3d 645, 652 (Ct. App. 2006). Here, even if the *Miranda* violations are considered as a factor in an attenuation analysis, Buhler is not entitled to relief.

[4] Buhler also asserts her consent was involuntary. However, Buhler has not cited the standard or test for voluntariness, *see, e.g.*, *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973), and while she concludes that her consent was involuntary, that conclusion is based on an analysis of the attenuation factors. To the extent that Buhler has asserted a voluntariness claim

8

## III.

### CONCLUSION

The district court's factual finding that Buhler consented to a search of her vehicle was based on substantial and competent evidence. Buhler's consent was not tainted by her legal detention, by an illegal frisk, or by a *Miranda* violation. Therefore, the district court's order denying Buhler's motion to suppress is affirmed.

Judge GUTIERREZ and Judge MELANSON **CONCUR.**

---

based on assertions that she was illegally "detained, denied access to her vehicle and sleeping child, handcuffed and ordered to sit on the bumper of the police cruiser and unlawfully interrogated about possession of drugs," we conclude that her argument has no merit. We first note that the district court did not make any explicit findings of voluntariness--presumably because Buhler's arguments below, like her arguments on appeal, only addressed the voluntariness of her consent in passing--and Buhler has not asserted that the district court failed to address an issue below. Second, even if the issue is preserved, Buhler's argument that her consent was not voluntary, to the extent that it was made at all, is based on precisely the same factors that she asserts caused her consent to be tainted. By rejecting these arguments, the district court implicitly rejected her voluntariness argument below, and we likewise reject the argument on appeal.